IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : CASE NO. |
| | : 1:20-CR-00114-WMR-CCB |
| STEPHEN ABBU JENKINS (16), | : |
| Defendant. | : |

## MR. JENKINS' SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE FROM THE GUIDELINES TO ACHIEVE A REASONABLE SENTENCE

COMES NOW MR. STEPHEN ABBU JENKINS, by and through undersigned counsel and files, this, his Sentencing Memorandum and Request for Variance from the Sentencing Guidelines in order to achieve a fair and reasonable sentence and shows in support as follows:

## BACKGROUND

Mr. Jenkins was charged, along with twenty-two other individuals in a conspiracy to commit money laundering. Although the conspiracy

1

lasted several years, Mr. Jenkins' contact was limited to his friendship and relationship with Co-Defendant Benjamin Oye. At the time of Mr. Jenkins' involvement with Mr. Oye he was attempting to improve the business prospects of his company, Face2Face Flooring, LLC. Face2Face Flooring, LLC was a legitimate business. (Sample Business Records, Attached as Exhibit 1). Mr. Oye indicated he would help finance the business but that Mr. Jenkins needed to help him. Unfortunately, Mr. Jenkins allowed Mr. Oye and his associates to use his accounts for his company, Face2Face Flooring, for Mr. Oye to launder money. This is the point when Mr. Jenkins allowed his legitimate company to be used for fraudulent purposes, a fact he deeply regrets and for which he pled guilty.

Mr. Jenkins pled guilty to Count One, pursuant to a plea agreement and agreed the value of the laundered funds was more than $550,000 but less than $1,500,000. He also agreed to forfeiture of certain assets, including his business account for Face2FaceFlooring, LLC.

## **MR. JENKINS' INVOLVEMENT IN THIS SCHEME WAS NOT EXTENSIVE**

Mr. Jenkins acknowledges the Court in this case has not found minor role adjustments based on the allocation of amount of loss for each named defendant. A few defendants were assessed aggravated roles. Mr. Jenkins did not object to the Pre-Sentence Report not finding a minor role was appropriate in this case. However, the Court does have the knowledge of the entire extent and breadth of the others named in this Indictment and for which each had responsibility for certain deposits and expenditures. The PSR found the loss attributable to Mr. Jenkins to be $726,290. (PSR, Par. 51). Mr. Jenkins did not contest this amount nor any of the findings of the United States Probation Officer regarding amount of loss.

Mr. Jenkins would note that his involvement allowed the use of his name and the use of his company to launder money by allowing deposits in his accounts and by assisting in these deposits. He withdrew certain funds from these accounts for which he used for personal reasons, including helping his family by paying their rent, buying them furniture and visiting them in Brooklyn. In particular, he sent money to his

daughter to help her pay her living expenses. (PSR, Pars. 25, 29, 43). He also used the money to pay for rent for his apartment. (PSR, Pars. 43-44). While Mr. Jenkins completely acknowledges his involvement in this scheme and for which the amount of loss of $726,290 was foreseeable to him, he would merely note his personal profit was substantially less than that. The money he did receive from this scheme was used primarily to assist his family. There is nothing to indicate he lived an extravagant life; indeed Mr. Jenkins continued to work at Macy's as a sales representative even while to trying to launch his business. This is a factor the Court may consider in determining a fair and reasonable sentence.

### MR. JENKINS' OBJECTION TO HIS CRIMINAL HISTORY POINTS AND ARGUMENT THAT HIS CRIMINAL HISTORY OVERSTATES THE SERIOUSNESS OF HIS CRIMINAL ACTIVITY

Mr. Jenkins is 53 years old. He has a Bachelor of Arts degree and has been gainfully employed his entire life. He has been married and he is a father. However, this does not tell the extent of Mr. Jenkins' background, which is quite remarkable in that despite all odds he was able to escape the homelessness and drug addiction he grew up in.

Mr. Jenkins was born in the Bronx, New York. His parents were not together and he was initially raised by first his mother and then, his paternal grandmother. Later, his mother moved them to public housing in New York City in a drug infested area. His mother was addicted to heroin. Mr. Jenkins' life was fairly miserable and it did not appear he would thrive.

When Mr. Jenkins turned 13 years old his mother followed a boyfriend to California. The boyfriend quickly abandoned Mr. Jenkins and his mother and they were forced to return to New York City where they became homeless and living on the streets. Mr. Jenkins was not enrolled in school at this time. Due to his mother's continued drug addiction and inability to maintain a job or a home for them to live, Mr. Jenkins was forced to go back and live with his paternal grandmother again, this time without his mother. Despite extreme poverty and the extensive drug activity in the neighborhood where he lived as well as his mother's continued severe addiction to heroin, Mr. Jenkins persevered and graduated from high school in Queens, New York.

It is compelling that Mr. Jenkins' cousin, Manette Balkus, contacted by the United States Probation Officer to confirm his information, described Mr. Jenkins' childhood as "very tumultuous" and describes him as always being in "survival mode". (PSR, Par. 86 a). Ms. Balkus notes that Mr. Jenkins is an excellent father. (PSR, Par. 86 a). Indeed, as stated above, Mr. Jenkins used the money he obtained from this fraudulent activity primarily for his family. What is absolutely astounding is that Mr. Jenkins survived a drug addicted mother, homelessness, poverty and no parental guidance to finish school, college and to become gainfully employed. Sadly, a part of his life has also involved contact with the criminal justice system. He has been involved in petty offenses when younger and a few theft offenses when he became older. However, considered how Mr. Jenkins grew up, it is not surprising he had run ins with the law.

Mr. Jenkins' criminal history reflects the tough childhood and neighborhood in which he grew up. It also reflects his cousin's description of him as always being in "survival mode". Mr. Jenkins does not deny the convictions, but would note that he maintains his conviction

6

for less than an ounce of marijuana was at the same time for his conviction for theft by taking in Savannah, August 9, 2011. (PSR, par. 69 and 70). When he was stopped for the pending warrant, there was a less than an ounce of a marijuana cigarette in his vehicle. This point should not be assessed against him as not only it has been an offense pardoned by executive order but it is double counting.

As the Probation Officer notes, that point does not change the category of his Criminal History, but a Criminal History Category of III overstates the seriousness of his criminality. (PSR Par. 74). Mr. Jenkins asserts a Criminal History Category I more accurately reflects his criminal history.

### **MR. JENKINS' ALREADY POOR HEALTH IS PERMANENTLY RUINED BECAUSE OF HIS INCARERATION IN RADD**

As this Court is aware, Mr. Jenkins developed diabetes at age 51 while incarcerated at RADD, despite having no history of diabetes. RADD diagnosed him in August of 2020 with diabetes after he experienced severe symptoms. Based on this underlying condition, developed only while he was incarcerated and due to the poor diet and

7

nutrition, Mr. Jenkins was in jeopardy of serious health consequences, including death, if he contracted COVID. It was suspected because of his age and no history of diabetes, that Mr. Jenkins had already contracted COVID which led to his becoming a diabetic. Studies during the time period of the early days of COVID showed that new onset diabetes was a side effect of having contracted COVID.

Based on all this information and research into diabetes and COVID, Counsel filed a request for his detention to be reconsidered and that he be released on bond. (Doc. 308). The Court granted the Motion for Review and vacated the detention order of March 19, 2020. (Doc. 334). The magistrate judge held a hearing and granted Mr. Jenkins' request for a bond. (Docs. 334, 334, 336).

Mr. Jenkins was released on bond on September 29, 2020. (Doc. 337). He has complied with all his conditions, maintained employment and stayed in touch with his probation officer. He was in total compliance of the requirements to the extent his probation officer agreed that he could be taken off the location monitor. The Court filed the Order modifying

his conditions of bond on January 13, 2022. (Doc. 626). Mr. Jenkins has continued to honor the requirements of his bond.

Additionally, Mr. Jenkins suffers from all over poor health, even worse now after his incarceration in RADD. Mr. Jenkins has a history of poor health, not surprising, considering his childhood. (PSR, Par. 88). He now, as a result of his pretrial incarceration at RADD, has Type 2 Diabetes, a condition he will have to live with for the rest of his life. During the hearing the Court conducted on Mr. Jenkins' motion to be released after contracting diabetes documents were presented that show that once a person has diabetes, they are prone to other ongoing health issues.

In addition to the diabetes, Mr. Jenkins also has high cholesterol and high blood pressure. He takes a myriad of medications. The Court can take all these factors into consideration in imposing a fair and reasonable sentence.

## MR. JENKINS' PERSONAL CHARACTERISTICS CALL FOR A VARIANCE FROM THE GUIDELINES

Mr. Jenkins re asserts his previous arguments in the above section regarding his criminal history and permanently damaged health as a basis for a variance from the Sentencing Guidelines pursuant to 18 U.S.C. § 3553 (a).   For the most part, Mr. Jenkins has been a law abiding person and a contributor to society.

Mr. Jenkins recently experienced a severe and profound loss.   His fiancé, Charisse Balde, lost her 7 year old daughter, Inayah, who had autism, when she drowned on February 3rd in Douglasville.   Inayah was as if she were his own daughter and the family has suffered immensely.  Mr. Jenkins wishes to stay and serve his time in Georgia so he can attempt his best to stay connected and committed to his fiancé and her other child through this terrible time.

Mr. Jenkins has always worked.   He has worked since he was a young man.   He has worked at Macy's, Nordstrom's, and Dillards.   He has attended college classes to better himself.   Mr. Jenkins opened his own business, which did not end well, but his original intentions were to

make a thriving business in an area of bustling commerce. His poor decision to assist Mr. Oye has resulted in additional suffering for him and for his family.

As noted in the Presentence Report and by the facts of this case, Mr. Jenkins has been devoted to his children and has tried to support them in every way he could. (See letters in support, attached as Exhibit 2). He has a strong support system, an extremely important factor in determining his future success and this Court can consider that factor in imposing a fair and reasonable sentence.

## CONCLUSION

Mr. Jenkins respectfully requests the Court grant his motion for a variance from the Sentencing Guidelines to impose a fair and reasonable sentence. Mr. Jenkins would submit a fair and reasonable sentence, in light of all he has argued would be 33 months, plus credit for the time he served in custody. Mr. Jenkins further requests the Court request the BOP assign him to a facility in Georgia, preferably a low security camp, so he can continue to see his family. He would also respectfully request he be allowed to self surrender.

WHEREFORE, for the above and foregoing reasons, Mr. Jenkins respectfully requests this Court grant his request for a sentence of 24 months, including credit for the time he has already served.

This 15th day of February, 2023.

Respectfully submitted,

*s/Sandra Michaels*
SANDRA MICHAELS
*Attorney for Stephen Jenkins*
Georgia Bar No. 504014
965 Virginia Ave, N.E.
Atlanta, Georgia  30306
(404) 312-5781
SLMichaelsLaw@gmail.com

## CERTIFICATE OF SERVICE

Undersigned counsel has served the forgoing **Sentencing Memorandum** today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

This 15th day of February, 2023.

*s/Sandra Michaels*
SANDRA MICHAELS
*Attorney for Stephen Jenkins*
Georgia Bar No. 504014
965 Virginia Ave, N.E.
Atlanta, Georgia  30306
(404) 312-5781
SLMichaelsLaw@gmail.com
